UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>SERVISENSE.COM, INC.,<br><br>Debtor. | Chapter 11<br>Case No. 01-16539-WCH |
| CRAIG R. JALBERT, LIQUIDATING<br>SUPERVISOR OF SERVISENSE.COM, INC.,<br><br>Plaintiff,<br>vs.<br><br>C. DAVID CHASE, ALAN R. STONE,<br>DAVID E. DRYER, GREGORY L. WHITE,<br>CHAPPELL WHITE LLP, SEYFARTH SHAW<br>and CHRISTOPHER J. McKEOWN,<br><br>Defendants. | Adv. Pro. No. 02-1429 |
| C. DAVID CHASE and ALAN R. STONE,<br><br>Counterclaim, Cross-Claim<br>and Third-Party Plaintiffs,<br>vs.<br><br>CHAPPELL WHITE LLP, GREGORY L.<br>WHITE, DAVID E. DRYER and CRAIG R.<br>JALBERT, LIQUIDATING SUPERVISOR<br>OF SERVISENSE.COM, INC.,<br><br>Counterclaim, Cross-Claim<br>and Third-Party Defendants. | |

**MEMORANDUM OF DECISION**

I. **Introduction**

The matter before the Court is the Application for Issuance of Writs of Attachment of

Real Estate of C. David Chase and Alan R. Stone and Motion to Appoint Special Process Server

1

(the "Application for Attachment"). In the Application for Attachment, the Liquidating Supervisor of ServiSense.com, Inc. (the "Liquidating Supervisor") argues that because he is reasonably likely to prevail in his adversary proceeding against C. David Chase ("Chase") and Alan R. Stone ("Stone"), he is entitled to attach their real estate to ensure payment of any future judgment. Chase and Stone argue that it would be inequitable to attach their real estate and dispute the likelihood of the Liquidating Supervisor's success in the underlying action. For the reasons stated below, I will exercise my discretion and deny the Application for Attachment.

II. **Facts**

The Liquidating Supervisor's action concerns, *inter alia*, a series of transactions between Chase and Stone and ServiSense.com, Inc., the Chapter 11 debtor ("ServiSense") in 2000 and 2001. On October 31, 2000, Chase and Stone each issued promissory notes to ServiSense in connection with their purchases of ServiSense stock. On May 18, 2001, ServiSense released Chase and Stone from their obligations under these promissory notes.

On August 20, 2001, the Debtor filed for Chapter 11 bankruptcy protection. On October 30, 2002, the Liquidating Supervisor filed his initial complaint in this adversary proceeding listing Chase, Stone, and several other parties as defendants. Since the original complaint was filed over three years ago this proceeding has moved slowly. The Liquidating Supervisor amended the complaint three times, and filed the Third Amended Complaint on February 6, 2006. The Liquidating Supervisor has filed only one dispositive motion, a motion for judgment on the pleadings on several of Chase's and Stone's counterclaims, since the time of the original complaint. A number of other motions have also been filed, but these have generally addressed peripheral issues and were not related to the core of the Liquidating Supervisor's claims.

2

In the Third Amended Complaint, the Liquidating Supervisor seeks, *inter alia*, to avoid the releases as fraudulent transfers pursuant to 11 U.S.C. § 548(a) and 11 U.S.C. § 544(b) and to recover amounts due under the promissory notes pursuant to 11 U.S.C. § 542(b). On February 27, 2006, Chase and Stone filed the Answer for Defendants Chase and Stone to Third Amended Complaint (the "Answer").[1]

Several months prior to the filing of the Third Amended Complaint, the Liquidating Supervisor filed the Application for Attachment. In the Application for Attachment, the Liquidating Supervisor seeks to attach the real property of Chase and Stone in order to ensure that any judgment obtained against them will be recoverable. Chase and Stone responded to the Application for Attachment with their Opposition of Defendants Chase and Stone to the Liquidating Supervisor's Application for Issuance of Writs of Attachment of Real Estate (the "Opposition"). On March 22, 2006, I held a hearing and took the matter under advisement.

III. **Analysis**

A party in an adversarial proceeding in bankruptcy court may seek to attach the property of an adversary based on the law of the state in which the bankruptcy court sits. Fed. R. Bankr. P. 7064 (adopting Fed. R. Civ. P. 64); *See Diane Holly Corp. v. Bruno & Stillman Yacht Co., Inc.*, 559 F. Supp. 559, 560 (D. N.H. 1983). In Massachusetts, a litigant may obtain an attachment pursuant to Mass. Gen. Laws ch. 223, §42 and Mass. R. Civ. P. 4.1(a) and (c). Mass. Gen. Laws ch. 223, §42 provides that

> All real and personal property liable to be taken on execution . . . may be attached
> upon a writ of attachment in any action in which the debt or damages are

---

[1] A more comprehensive and detailed review of the factual and procedural history of this case can be found in my decision *Jalbert v. Chase et. al. (In re ServiSense.com, Inc.)*, 337 B.R. 434 (Bankr. D. Mass. 2006), although that decision has no bearing on my disposition of the matter now before me.

3

> recoverable, and may be held as security to satisfy such judgment as the plaintiff may recover . . .

Mass R. Civ. P. 4.1(a) provides that

> Subsequent to the commencement of any action under these rules, real estate, goods and other chattels and other property may, in the manner and to the extent provided by law, and subject to the requirements of this rule, be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover.

And Mass. R. Civ. P. 4.1(c) states that an order approving an attachment

> . . . may be entered . . . upon a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment.

In the Application for Attachment, the Liquidating Supervisor argues that he is entitled to an attachment because the properties he seeks to attach are capable of attachment and because there is a reasonable likelihood that he will recover judgment in an amount equal to or greater than the attachment. Chase and Stone oppose the Application for Attachment for two reasons. They first contend that the equities, which they argue I can consider, weigh in their favor. Second, they contend that the Liquidating Supervisor has not established a reasonable likelihood of success.

To support their first argument, Chase and Stone assert that the inclusion of the word "may" in the above-cited statute and rules indicates that in Massachusetts a court has discretion to decline to impose an attachment even when the predicates for attachment are met. They contend that the factors I would consider in exercising my discretion weigh in their favor. Those factors include the delay in the Liquidating Supervisor's requested relief, the lack of fraudulent activity and the extent of their personal assets.

4

At the hearing on the Application for Attachment, the Liquidating Supervisor countered that he is not required to give any cause for his request for an attachment. He argued that if I were to find and exercise discretion in deciding the Application for Attachment, the proffered factors would not weigh in Chase and Stone's favor. The Liquidating Supervisor argued that there was no delay in bringing the Application for Attachment as there is no time limit for requesting an attachment. While he did not allege that Chase and Stone have engaged in fraudulent activity, he explained that he was seeking the attachments because Chase and Stone have significantly mortgaged their homes during the pendency of the case. He also offered that Chase and Stone could transfer their homes before he obtains a judgment and that their homes and other assets were vulnerable to tort claimants. The Liquidating Supervisor contended that Chase and Stone's financial health is irrelevant to determining whether to allow an attachment, and argued that even if it were relevant, Chase and Stone's investments, which constitute much of their wealth, might lose all or most of their value.

The first issue I must consider is whether I have discretion in deciding the Application for Attachment. The statute and rules which permit an attachment contain the word "may," which the Supreme Judicial Court has interpreted as permissive, not mandatory. *See, e.g., Wiedman v. The Bradford Group, Inc.*, 831 N.E.2d 304, 313 (2005). In the few reported cases in Massachusetts which have discussed attachments, the courts applied the attachment rules permissively. *See, e.g., Hasbro, Inc. v. Serafino*, 1997 U.S. Dist. LEXIS 2511, 18-19 (D. Mass 1997), *adopted by* 958 F. Supp. 19 (D. Mass. 1997) ("[i]t is one thing . . . when an attachment protects a plaintiff's interest, but hardly burdens a defendant's day-to-day needs. It is quite another when an attachment acts to freeze a defendant's assets to which access is otherwise necessary – for attorney fees, for example – particularly when those assets are unrelated to the

underlying suit."),[2] *Anderson Foreign Motors, Inc., et al. v. New England Toyota Distrib., Inc., et al.*, 492 F. Supp. 1383, 1390 (D. Mass. 1980) (reconsidering a motion for attachment, the court stated "[t]he propriety of attachments depends on the attendant circumstances, including the apparent strength of the plaintiffs' case and the location, current use, valuation and current interests in property sought to be attached.").

Several Massachusetts practice guides share this view. *See* J. Mith & H. Zobel, 6 Mass. Prac. Rules Practice 4.1.11 (2d ed. 2000 & Supp. 2006) ("Presumably, the court may consider any probative evidence, giving it weight appropriate to its nature and source. By use of the word "may" the rule suggests that the granting of an attachment is in the nature of an exercise of sound judicial discretion . . ."), J. Shapiro, M. Perlin & J. Connors, 48 Mass. Prac. Collection Law 4.78 (1974 and Supp. 2006) ("It would appear that even if the plaintiff satisfies the court that there is a reasonable likelihood of recovery, the court nevertheless has discretion to limit the amount or type of attachment or to deny the attachment entirely."). Based upon the permissive language in the statute and rules and the manner in which the language has been interpreted, I conclude that I have discretion in deciding applications for attachment, even when the criteria required to allow them are present.

Having determined that I have discretion, I will examine the factors that Chase and Stone urge me to consider in exercising my discretion. The first item which Chase and Stone discussed in support of their objection was undue delay. The Liquidating Supervisor waited for three years before applying for an attachment. While he is correct that there is no deadline for requesting an

---

[2] The *Hasbro* court allowed the attachment because it found that the plaintiff had shown a reasonable likelihood of success, but the court commented that if the defendant had asked that any of his assets be exempted from attachment it would have closely examined the issue. *Id.*

attachment,[4] the Liquidating Supervisor has failed to explain why he needs security for a judgment in a case that has largely languished for more than three years. The only reasons he gives for seeking an attachment at this time are his concerns that Chase and Stone have mortgaged their properties during the pendency of the litigation, that the value of their investments and assets could plunge, and that some unknown involuntary creditor may surface and obtain priority over the Liquidating Supervisor's potential judgment. That these facts existed one or two or three years ago without the Liquidating Supervisor taking action, leads me to conclude that they are not well founded.

As to their second point, Chase and Stone are correct that the Liquidating Supervisor has not alleged that they have engaged in fraudulent activity. They have explained that they took out mortgages on their homes during this case in order to finance investments and that they retain equity in those properties. They have had ample time and opportunity to transfer assets out of the reach of the Liquidating Supervisor but do not appear to have exercised that option.

The third factor to which Chase and Stone cite is their financial condition. Courts have issued conflicting opinions regarding whether a defendant's means to pay a potential judgment is a relevant consideration when deciding whether to grant an attachment. *Compare Papa Gino's v. Assembly Square Mall*, 1998 WL 1181159 * 1 (Mass. Super. 1998) ("Unless [the plaintiff] comes forth with evidence that [the defendant] lacks sufficient assets to satisfy a judgment against it on [the plaintiff's] claims, the court will not presume such is the case."), and *Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, Shopmen's Local Union 501 v. Burtman Iron Works, Inc.*, 164 F.R.D. 305, 307 (D. Mass. 1995) (concluding, without explanation, that the

---

[4] J. Mith & H. Zobel, 6 Mass. Prac. Rules Practice 4.1.2 (2d ed. 2000 & Supp. 2006) ("The motion for allowance of an order of attachment . . . may be filed either with the complaint, or at any time thereafter.").

means of the defendant is irrelevant).

Given that the purpose of an attachment is to secure the ability of the plaintiff to recover on a potential judgment, *Matses v. Leeman*, 2003 WL 835969 * 3 (Mass. Super. 2003), I conclude that the financial condition of a defendant is a relevant inquiry when considering whether to exercise my discretion. The defendants in this case have amply demonstrated that they retain significant equity in their homes should their investments fail.[5] I see no indication that the Liquidating Supervisor's ability to collect a judgment is any less secure now than it was over the past three years.

The factors to which Chase and Stone direct the Court weigh in their favor. There are no other factors which the Liquidating Supervisor has raised. Accordingly, I will enter an order denying the Application for Attachment.

Because I choose to exercise my discretion under the applicable rules and statute and deny the Application for Attachment, I need not decide the question of whether the Liquidating Supervisor is reasonably likely to succeed in his fraudulent conveyance action against Chase and Stone.

---

[5] Stone claims to have $2,510,000 in various investments, $550,000 worth of equity in his real estate, and values his other assets at $700,000. Exhibit C, Affidavit of Alan R. Stone in Opposition to Application for Real Estate Attachments, Docket No. 119. Chase claims to have $3,750,000 in various investments, $3,300,000 worth of equity in his real estate, and values his other assets at $1,750,000. Exhibit C, Affidavit of C. David Chase in Opposition to Application for Real Estate Attachments, Docket No. 120. The Liquidating Supervisor did not challenge these claims.

8

IV. **Conclusion**

For the reasons discussed above, I will enter an order denying the Application for Attachment.

*William C. Hillman*
United States Bankruptcy Judge

Dated: 5/2/06

Counsel Appearing:
Jeffrey R. Martin and John F. Drew, Burns & Levinson LLP, Boston, MA., for Chase and Stone.
Michael J. Fencer and Howard P. Blatchford, Jr., Jager Smith P.C., Boston, MA., for the Liquidating Supervisor.